ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV 16 2005

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

SECURITIES AND EXCHANGE COMMISSION,

  Plaintiff,

vs.

JONATHAN D. NELSON,

  Defendant,

XIT LAND & ENERGY, INC.,
CHISUM TRAVEL CENTER, LTD.,
Z8 PROPERTIES, LTD.,
THREE STARS AVIATION, LLC, and
CHISUM COACH, LTD.,

  Relief Defendants.

COMPLAINT

Civil Action No.

5-05CV0266-C

Plaintiff Securities and Exchange Commission alleges the following:

## SUMMARY

1. Jonathan D. Nelson is the former Chief Financial Officer, Vice President, Secretary and Treasurer of Patterson-UTI Energy, Inc., a publicly-traded onshore oil drilling, exploration and production company headquartered in Snyder, Texas.

2. From at least January 2001 to November 2005, Nelson engaged in a bogus invoice scheme which defrauded Patterson-UTI and its shareholders of tens of millions of dollars. Nelson submitted bogus invoices to Patterson-UTI on behalf of XIT Land & Energy, Inc., a company Nelson controls. Nelson then forged approvals on internal company documents, causing Patterson-UTI to pay the invoices to XIT. XIT received the bogus invoice payments in a bank account controlled by Nelson.


3. In November 2005, a Patterson-UTI official questioned Nelson regarding the XIT invoices. While Nelson confessed that he had embezzled approximately $29 million from the company through the bogus invoice, Nelson has in fact diverted as much as $70 million in unauthorized payments to XIT during the period.

4. Nelson transferred the embezzled funds from the XIT bank account to other entities he controls, including Relief Defendants Chisum Travel Center, Ltd., Z8 Properties, Ltd., Three Stars Aviation, LLC and Chisum Coach, Ltd. Nelson used the funds to purchase an airplane, an airfield, a cattle ranch, homes, vehicles and a truck stop, among other things.

5. Patterson-UTI's public filings with the Commission since 2000 – which Nelson approved and/or signed – were materially false and misleading because they never disclosed any of these facts.

6. In the interest of protecting the public from fraudulent activities, the Commission brings this action seeking an order enjoining Nelson from further violations of Section 17(a) of the Securities Act of 1933 ("Securities Act"), Sections 10(b) and 13(b)(5) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rules 10b-5, 13a-14, 13b2-1 and 13b2-2 thereunder, and for aiding and abetting Patterson-UTI's violations of Sections 13(a), 13(b)(2)(A), 13(b)(2)(B) and 14(a) of the Exchange Act and Rules 12b-20, 13a-1 and 14a-9 thereunder. The Commission also seeks an order requiring Nelson and the Relief Defendants to disgorge all ill-gotten gains, plus prejudgment interest thereon, and Nelson to pay a civil monetary penalty. The Commission also seeks an order barring Nelson from serving as an officer or director of any public company.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77u(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Defendant has, directly and indirectly, made use of the means or instrumentalities of interstate commerce and/or the mails in connection with the transactions described in this Complaint.

8.      Venue lies in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77u(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa], because certain of the acts and transactions described herein took place in Lubbock and Snyder, Texas.

## DEFENDANTS

9.      Jonathan D. Nelson, age 36, resides in Dallas, Texas, and served as Patterson-UTI's CFO from 1999 to November 3, 2005, when he resigned for unspecified "personal reasons."

## RELIEF DEFENDANTS

10.     XIT Land & Energy, Inc. was incorporated in Texas on May 8, 2000, and is located in Lubbock. Nelson owns and controls XIT.

11.     Chisum Travel Center, Ltd. is a Texas limited partnership based in Lubbock, and shares the same address as XIT.

12.     Z8 Properties, Ltd. is a Texas limited partnership based in Lubbock, and shares the same address as XIT.

13.     Chisum Coach, Ltd. is a Texas limited partnership based in Lubbock, and shares the same address as XIT.

14.     Three Stars Aviation, LLC is a Delaware limited liability company headquartered in Lubbock, and shares the same address as XIT.

RE: SEC v. Jonathan Dwane Nelson, et al.
Complaint

3

## RELEVANT ENTITY

15.     **Patterson-UTI Energy, Inc.** is a Delaware corporation headquartered in Snyder, Texas. Patterson-UIT is the nation's second-largest onshore oil drilling provider. Patterson-UTI's common stock is registered pursuant to Section 12(g) of the Exchange Act and trades on the Nasdaq National Market.

## ALLEGATIONS

### *The Bogus Invoice Scheme*

16.     From around 1999 to November 2005, Nelson was the Chief Financial Officer of Patterson-UTI. He was also vice president, secretary and treasurer of the company.

17.     Nelson's duties as CFO included overseeing the company's financial-accounting functions, developing and implementing internal controls over these functions, overseeing the preparation of the company's financial statements for inclusion in quarterly and annual reports to the Securities and Exchange Commission, making representations to the company's independent auditors regarding the accuracy of the company's financial statements, and certifying the truthfulness and accuracy of the financial statements and other statements in the company's quarterly and annual SEC reports.

18.     From at least January 2001 to October 2005, Nelson caused Patterson-UTI to pay XIT's bogus invoices. Nelson forged initials on company documents that were required to approve the invoices before they were paid, thus circumventing company policy and frustrating the company's internal controls.

19. Nelson caused Patterson-UTI to make the following payments to XIT in furtherance of the bogus invoice scheme:

| Preliminary Schedule of XIT Payments | |
|---|---|
| Payment Date | Amount |
| 01/25/2001 | 750,000 |
| 01/31/2001 | 750,000 |
| 03/26/2001 | 750,000 |
| 04/17/2001 | 750,000 |
| 06/25/2001 | 900,000 |
| 09/25/2001 | 750,000 |
| 10/15/2001 | 750,000 |
| 10/31/2001 | 950,000 |
| 12/03/2001 | 750,000 |
| 12/31/2001 | 550,000 |
| | 7,650,000 |
| | |
| 03/06/2002 | 750,000 |
| 05/13/2002 | 1,400,000 |
| 05/31/2002 | 750,000 |
| 06/20/2002 | 750,000 |
| 07/09/2002 | 1,350,000 |
| 11/05/2002 | 1,350,000 |
| 12/10/2002 | 2,200,000 |
| | 8,550,000 |
| | |
| 01/22/2003 | 1,500,000 |
| 03/17/2003 | 500,000 |
| 04/01/2003 | 1,250,000 |
| 04/17/2003 | 1,500,000 |
| 04/30/2003 | 800,000 |
| 05/02/2003 | 125,000 |
| 05/05/2003 | 1,750,000 |
| 05/19/2003 | 2,000,000 |
| 07/01/2003 | 2,000,000 |
| 07/22/2003 | 2,200,000 |
| 08/27/2003 | 1,300,000 |
| 10/21/2003 | 2,150,000 |
| 12/24/2003 | 750,000 |
| | 17,825,000 |

| Payment Date | Amount |
|---|---|
| 01/12/2004 | 3,000,000 |
| 04/06/2004 | 1,455,750 |
| 04/30/2004 | 2,125,348 |
| 07/14/2004 | 1,268,244 |
| 08/03/2004 | 1,850,000 |
| 09/07/2004 | 1,635,000 |
| 10/13/2004 | 1,300,000 |
| 11/12/2004 | 1,500,000 |
| 12/15/2004 | 1,250,000 |
|  | 15,384,342 |
| 02/22/2005 | 1,600,000 |
| 04/15/2005 | 1,400,000 |
| 05/17/2005 | 2,250,000 |
| 06/09/2005 | 1,500,000 |
| 07/06/2005 | 2,250,000 |
| 08/29/2005 | 2,500,000 |
| 09/28/2005 | 675,000 |
| 10/03/2005 | 2,500,000 |
| 10/20/2005 | 2,150,000 |
| 10/31/2005 | 3,200,000 |
|  | 20,025,000 |
| TOTAL | 69,434,342.00 |

20. In the fall of 2005, the company began conducting a routine review of payroll and 401K plan records. As part of that review, company officials made certain inquiries of Nelson regarding the payroll and tax records. On November 3, 2005, Nelson resigned abruptly.

21. Following Nelson's resignation, the company began investigating certain large payments Nelson directed the company to make, including payments to XIT. On November 9, 2005, Nelson admitted to a company official that he controlled XIT; that he had circumvented company policy and internal controls so that the company would pay XIT based on bogus invoices Nelson prepared; that he forged signatures or initials on internal documents to cause Patterson-UTI to make payments to XIT; and that he directed payments to be made to a XIT bank account maintained at Bank of America that Nelson controlled.

22. Nelson further admitted that he misappropriated approximately $29 million from Patterson-UTI. According to company records, Nelson in fact embezzled almost $70 million of Patterson-UIT funds.

23. XIT was not a legitimate vendor of Patterson-UTI, and Nelson caused the payment of bogus invoices to XIT without the authority of Patterson-UTI. Patterson-UTI did not receive any value in exchange for any of the payments to XIT.

24. Nelson transferred, directly or indirectly, the embezzled funds from the XIT bank account to other entities he controlled for no apparent consideration, including transfers to Relief Defendants Chisum Travel, Z8 Properties, Three Stars Aviation and Chisum Coach. Nelson used the funds to purchase an airplane, an airfield, a West Texas cattle ranch, homes, vehicles and a full-service truck stop, among other things.

### *Material Misrepresentations and Omissions*

25. In March 2001, Patterson-UTI filed a proxy statement as part of a registration statement on SEC Form S-4 in connection with the merger between the company's predecessor firms. As required by the Form S-4, the proxy statement purported to disclose the related party transactions during the prior year that exceeded $60,000, which are required to be disclosed under Item 404 of Regulation S-K. The Form S-4 did not disclose the amounts Nelson had caused Patterson-UTI to pay XIT, which exceeded $60,000. Nelson, as CFO of the acquiring company in the merger, reviewed and approved this filing.

26. In each year between April 2002 and April 2005, Patterson-UTI filed its annual proxy statement pursuant to Section 14(a) of the Exchange Act, purporting to disclose information concerning the company's related party transactions during the year that exceeded $60,000, as required by Item 404 of Regulation S-K. The annual proxy statement, which Nelson

reviewed and approved, did not disclose the amounts Nelson had caused Patterson-UTI to pay to XIT, which greatly exceeded $60,000.

27. In connection with the audits of Patterson-UTI's annual financial statements between December 31, 2000 and December 31, 2004, and the reviews of the company's quarterly financial statements during that period through the quarter ended June 30, 2005, Nelson signed representation letters to Patterson-UTI's auditors representing, among other things, that "[t]here has been no fraud involving management or employees who have significant roles in the Company's internal control" in the current year or quarter. He also represented that the company had properly recorded or disclosed all related party transactions. For the reasons alleged herein, these representations were false.

28. For each of Patterson-UTI's quarterly and annual periodic filings between September 30, 2002 and June 30, 2005, Nelson certified the facts required under Exchange Act Rule 13a-14, including:

(a) that Nelson had reviewed the filing;

(b) that the filing did "not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report";

(c) that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report";

(d) that Nelson was responsible for establishing and maintaining disclosure controls and procedures and internal control over financial reporting for Patterson-UTI and had,

among other things, "designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles" and "disclosed in this report any change in [Patterson-UTI]'s internal control over financial reporting that occurred during [its] most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting"; and

(e) that Nelson had "disclosed, based on [his] most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions): (a) all significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and (b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting."

29. In light of Nelson's bogus invoice scheme, the certifications identified above were false and misleading.

### *Victims of the Scheme*

30. Nelson defrauded Patterson-UTI and its shareholders by theft of money and by causing Patterson-UTI to falsify financial information that was disclosed to shareholders and the public. Patterson-UTI, which is traded on the NASDAQ exchange, has more than 172 million

shares outstanding with a market capitalization in excess of $5 billion, and an average daily trading volume exceeding 2.5 million shares.

31. On November 10, 2005, the company announced publicly that $70 million may have been embezzled from the company by a former officer over a five year period. The company's share price dropped nearly 13% within hours of the announcement, and trading volume more than tripled to 9 million shares.

## FIRST CLAIM
## Antifraud Violations of Section 17(a) of the Securities Act

32. Paragraphs 1 through 31 are realleged and incorporated by reference.

33. The Defendant, directly or indirectly, singly or with others, in the offer or sale of securities, has: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices and courses of business which operate as a fraud or deceit upon purchasers, prospective purchasers, and other persons.

34. The Defendant knowingly or recklessly engaged in the conduct described in this claim.

35. By reason of the foregoing, the Defendant violated, and unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q].

## SECOND CLAIM
### Antifraud Violations of Section 10(b) of the Exchange Act and Rule 10b-5

36.  Paragraphs 1 through 31 are realleged and incorporated by reference.

37.  The Defendant, directly or indirectly, singly or with others, in connection with the purchase or sale of securities, has: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices and courses of business which operate as a fraud and deceit upon purchasers, prospective purchasers and other persons.

38.  The Defendant knowingly or recklessly engaged in the conduct described in this claim.

39.  By reason of the foregoing, the Defendant violated, and unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## THIRD CLAIM
### Reporting and Recordkeeping Violations of Section 13(b)(5) of the Exchange Act and Rules 13b2-1 and 13b2-2 Thereunder

40.  Paragraphs 1 through 31 are realleged and incorporated by reference.

41.  Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)] provides that no person shall knowingly falsify any such book, record, or account or knowingly circumvent the registrant's system of internal accounting controls. Exchange Act Rule 13b2-1 [17 C.F.R. § 240.13b2-1] prohibits the falsification of any book, record, or account subject to Section 13(b)(2)(A). Exchange Act Rule 13b2-2 [C.F.R. § 240.13b2-2] prohibits an officer or

director of an issuer from (a) making or causing to be made a materially false or misleading statement or (b) omitting or causing to be omitted a statement of a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading to an accountant in connection with a required audit or the preparation or filing of a required document or report.

42. The Defendant knowingly or recklessly engaged in the conduct described in this claim.

43. By reason of the foregoing, the Defendant violated, and unless enjoined, will continue to violate Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)] and Rules 13b2-1 and 13b2-2 thereunder [17 C.F.R. §§ 240.13b2-1 and 13b2-2].

## FOURTH CLAIM
### False Certification of Disclosures in Annual and Quarterly Reports: Exchange Act Rule 13a-14

44. Paragraphs 1 through 31 are realleged and incorporated by reference.

45. Effective for periods ending after August 29, 2002, Rule 13a-14 under the Exchange Act [C.F.R. § 240.13a-14] requires each principal executive and principal financial officer of an issuer, or persons performing similar functions, to sign a certificate to accompany each periodic annual or quarterly report (including reports on Forms 10-K or 10-Q). The officer must certify, among other things, that: (i) he has reviewed the company's Form 10-K or Form 10-Q report; (ii) based on his knowledge, the report does not omit or misstate a material fact; (iii) based on his knowledge, the financial information contained in the report fairly presents in all material respects the financial condition and results of operations of the company; (iv) he is responsible for maintaining internal controls that comply with Exchange Act rules requiring an issuer to establish and maintain a system of disclosure controls and procedures; and (v) he has

disclosed to the issuer's auditors and the Audit Committee of the board of directors any fraud, whether or not material, that involves management or other employees who have a significant role in the issuer's internal controls.

46. By reason of the foregoing, the Defendant violated, and unless enjoined, will continue to violate Exchange Act Rule 13a-14 [17 C.F.R. § 240.13a-14].

## FIFTH CLAIM
### Reporting Violations:
### Exchange Act Sections 13(a) and Rules 12b-20 and 13a-1 Thereunder

47. Paragraphs 1 through 31 are realleged and incorporated by reference.

48. Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rule 13a-1 thereunder [17 C.F.R. § 240.13a-1] require Patterson-UTI to file annual reports with the Commission that are true and correct, and to keep this information current. Exchange Act Rule 12b-20 [17 C.F.R. § 240.12b-20] further requires inclusion of any additional material information that is necessary to make required statements, in light of the circumstances under which they were made, not misleading.

49. Based on the conduct alleged herein, Patterson-UTI violated Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)], and Rules 12b-20 and 13a-1 thereunder [17 C.F.R. §§ 240.12b-20 and 13a-1].

50. Nelson, acting alone or with others, in the manner set forth above, knowingly provided substantial assistance to Patterson-UTI in its violations of, and thereby aided and abetted Patterson-UTI in its violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)], and Rules 12b-20 and 13a-1 thereunder [17 C.F.R. §§ 240.12b-20 and 13a-1].

## SIXTH CLAIM
### Recordkeeping and Internal Controls Violations:
### Exchange Act Sections 13(b)(2)(A) and 13(b)(2)(B)

51.     Paragraphs 1 through 31 are realleged and incorporated by reference.

52.     Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)] requires Section 12 registrants to make and keep books, records, and accounts that accurately and fairly reflect the transactions and dispositions of their assets. Section 13(b)(2)(B) of the Exchange Act [15 U.S.C. § 78m(b)(2)(B)] requires issuers to devise and maintain an adequate system of internal accounting controls.

53.     Based on the conduct alleged herein, Patterson-UTI violated Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and (b)(2)(B)].

54.     Nelson, acting alone or with others, in the manner set forth above, knowingly provided substantial assistance to Patterson-UTI in its violations of, and thereby aided and abetted Patterson-UTI in its violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and (b)(2)(B)].

## SEVENTH CLAIM
### Proxy Violations: Exchange Act Section 14(a) and Rule 14a-9 Thereunder

55.     Paragraphs 1 through 31 are realleged and incorporated by reference.

56.     Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] prohibits any person from soliciting any proxy or consent, in respect of any security registered pursuant to Section 12 of the Exchange Act, that is in contravention of the Commission's rules. Exchange Act Rule 14a-9 [17 C.F.R. § 240.14a-9] prohibits any such solicitation by means of any proxy statement, form of proxy, notice of meeting, or other communication containing any untrue statement of material fact or omitting to state a material fact.

57. Based on the conduct alleged herein, Patterson-UTI violated Section 14(a) of the Exchange Act [15 U.S.C. § 78n(a)] and Rule 14a-9 thereunder [17 C.F.R. § 240.14a-9].

58. Nelson, acting alone or with others, in the manner set forth above, knowingly provided substantial assistance to Patterson-UTI in its violations of, and thereby aided and abetted Patterson-UTI in its violations of Section 14(a) of the Exchange Act [15 U.S.C. §§ 78n(a)] and Rule 14a-9 thereunder [17 C.F.R. § 240.14a-9].

### EIGHTH CLAIM
### Claim Against the Relief Defendants
### As Custodians of Misappropriated Funds

59. Paragraphs 1 through 31 are realleged and incorporated by reference.

60. Relief Defendants have received funds and/or property, directly or indirectly, from the Defendant, which are the proceeds or traceable to the proceeds of the unlawful activities of the Defendant.

61. Relief Defendants have obtained the funds and/or property alleged above under circumstances in which it is not just, equitable or conscionable for them to retain the funds and/or property. As a consequence, Relief Defendants have been unjustly enriched.

### PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

### I.

Enjoin Nelson from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5, 13a-14, 13b2-1 and 13b2-2 thereunder [17 C.F.R. § 240.10b-5, 240.13a-14, 240.13b2-1, and 240.13b2-2, respectively], and order incidental emergency relief, including an order freezing assets, appointing a receiver and other relief intended to preserve the *status quo*.

**II.**

Order Nelson and the Relief Defendant to disgorge an amount equal to the funds and benefits they obtained illegally as a result of the violations alleged herein, plus prejudgment interest on that amount.

**III.**

Order civil penalties against Nelson pursuant to Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], for the violations alleged herein.

**VI.**

Bar Nelson from acting as an officer or director of any company that has a class of securities registered with the Commission pursuant to Section 12 of the Exchange Act or that is required to file reports with the Commission pursuant to Section 15(d) of the Exchange Act.

**V.**

Grant such further relief as this Court may deem just and proper.

Respectfully submitted,

*/s/ J. Kevin Edmudson*

J. KEVIN EDMUDSON
Texas Bar No. 24044020
STEVE KOROTASH
Oklahoma Bar No. 5102

SECURITIES and EXCHANGE COMMISSION
801 Cherry Street, 19th Floor
Fort Worth, Texas 76102
(817) 978-1411
FAX: (817) 978-4927
EdmundsonK@sec.gov

RE: SEC v. Jonathan Dwane Nelson, et al.
Complaint

16

<u>Of Counsel:</u>

David Peavler, Texas Bar No. 00784738
Timothy McCole, Mississippi Bar No. 10628
John Popham, Texas Bar No. 16139205
Securities and Exchange Commission
Fort Worth District Office
801 Cherry Street, 19th Floor
Fort Worth, TX  76102

JS 44 Reverse (Rev. 3/99)

**ORIGINAL**

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I.(a) PLAINTIFFS**

U.S. SECURITIES AND EXCHANGE COMMISSION

**Defendants-**
JONATHAN DWANE NELSON
XIT LAND & ENERGY, INC., CHISUM TRAVEL CENTER, LTD., Z8 PROPERTIES, LTD., THREE STARS AVIATION, LLC, and CHISUM COACH, LTD., Relief Defendants

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant:
(IN U.S. PLAINTIFF CASES ONLY) **DALLAS**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEY (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Steve Korotash / J. Kevin Edmundson
U.S. Securities & Exchange Commission
801 Cherry Street, Suite 1900, Unit 18
Fort Worth, TX 76102-6882 (817) 978-6490/1411

ATTORNEYS (IF KNOWN)

5-05CV0266-C

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (For Diversity Cases Only)
(PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

|  | PTF | PTF |  | PTF | PTF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 156 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | ☐ 630 Liquor Laws | | ☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R R. & Truck | PROPERTY RIGHTS | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | PERSONAL PROPERTY | ☐ 650 Airline Regs | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| ☐ 153 Recovery OF Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 840 Trademark | ☒ 850 Securities Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | LABOR | SOCIAL SECURITY | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395FF) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Habeas Corpus: | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 870 Taxes (U.S Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (Specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

Section 17(a) of the Securities Act [15 U.S.C. § 77q], Sections 10(b), 13(a), 13(b)(2)(A), 13(b)(2)(B), 13(b)(5) and 14a of the Exchange Act [15 U.S.C. §§ 78j(b), 78m(a), 78m(b)(2)(A), 78m(b)(2)(B), 78m(b)(5) and 78n(a)] and Rules 10b-5, 12b-20, 13a-1 13b2-1 and 13b2-2 thereunder [17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-1, 240.13b2-1 and 13b2-2] and Rule 13a-14 [17 C.F.R. § 240.13a-14]

**VII. REQUESTED IN COMPLAINT:** CHECK IF THIS IS A CLASS ACTION ☐ UNDER F.R.C.P. 23   DEMAND $ _____   CHECK YES only if demanded in complaint:
JURY DEMAND ☐ YES   ☐ NO

**VIII. RELATED CASE(S) IF ANY** (See Instructions): JUDGE _____ DOCKET NUMBER _____

DATE: November 15, 2005
SIGNATURE OF ATTORNEY OF RECORD: _/s/_

FOR OFFICE USE ONLY
Receipt # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____