IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 5:05-CV-266-C ) ECF |
| JONATHAN D. NELSON, | ) ) |
| Defendant, | ) ) |
| XIT LAND & ENERGY, INC., et al., | ) ) |
| Relief Defendants. | ) |
| ROBERT B. WILSON, Receiver of the Estate of Jonathan D. Nelson, Complainant | ) ) ) |
| v. | ) ) |
| DOUG SABO, Respondent | ) |

# ORDER

Came on for trial in the above-styled and -numbered cause Receiver's Complaint for Disgorgement. Both parties appeared and announced ready on November 13, 2007.

The Court, having heard the evidence and arguments, makes the following findings of fact:

1. Complainant, Robert B. Wilson ("Receiver"), was appointed Temporary Receiver of the Estate of Jonathan D. Nelson ("Nelson") on or about November 16, 2005, by Order of this Court and given authority to collect and liquidate the assets of Jonathan D. Nelson ("Nelson")

and his related entities. Chisum Mountain Homes, Inc. ("CMHI") was specifically added as a Relief Defendant in the Receivership on December 1, 2005.

2. Respondent, Doug Sabo ("Respondent"), appearing pro se, is an individual residing in Ruidoso, New Mexico, who was in business with Nelson prior to the initiation of the Receivership.

3. On May 25, 2007, the Receiver filed Receiver's Complaint for Disgorgement seeking moneys alleged to have been expended from a CMHI bank account on which Respondent had signatory authority after the Receivership was initiated and after Respondent is alleged to have been on notice of the Receivership. The Receiver's demand letter to Adam Rafkin, Respondent's attorney at the time the letter was sent, sought $23,200 to settle the matter between the Receivership and Respondent. The Receiver's Complaint for Disgorgement filed in this Court seeks $200,000 as funds alleged to have been misappropriated.

4. Respondent and Nelson were in business together for a period of time prior to the formation of a corporation in which they both held an ownership interest. On March 20, 2003, a corporation known as CMHI was formed to purchase and sell land and construct homes in and around Ruidoso. The stock of CMHI was owned 85 percent by Nelson and 15 percent by Respondent. Nelson contributed capital to CMHI in excess of $696,000. Respondent was paid a salary from CMHI until at least November 2005 and acted in the role of general contractor for the speculative homes that were built in Ruidoso by CMHI. CMHI built at least two speculative homes for resale in Ruidoso. One of these homes was substantially complete at the time the Receivership was initiated, and the other, 2003 College Drive, was "dried in" with a paved driveway and metal roof.

5. Respondent was visited in late November of 2005 by an agent of the Receiver, Walter O'Cheskey, who was sent to Ruidoso by the Receiver to inventory any assets of Nelson and his related entities and inform Respondent of the Receivership.

6. Respondent and Receiver spoke on the telephone in early December of 2005 regarding the Receivership and its effects upon CMHI and Respondent. Respondent's and Receiver's recollections of the telephone conversation concur that Respondent was concerned with how the Receivership would affect his livelihood and business. Respondent was also concerned that the subcontractors and vendors would look to him for payment because his name was on the accounts and invoices relating to the goods and services provided in the construction of the speculative homes.

7. Respondent perceived that the Receiver gave him permission to continue the operations of CMHI so that construction on the 2003 College Drive speculative home in Ruidoso could be continued. The Receiver does not recall giving such permission to the Respondent but recalls informing Respondent that all CMHI operations must halt because the Receivership could not engage in speculative business ventures.

8. Respondent was visited by another agent of the Receiver on or about December 12, 2005. The second agent of the Receiver, Don Feazell, testified at trial that he provided a copy of the Court's Order Appointing Temporary Receiver and requested to be shown the CMHI properties. Feazell changed the locks on the CMHI houses but does not recall any construction workers being present at the 2003 College Drive house at that time or any construction work occurring on that date.

9. Prior to the Receivership, CMHI maintained a bank account at Pioneer Bank of Roswell, New Mexico, as well as an account at Bank of America in Lubbock, Texas. The Receiver became aware of the CMHI Bank of America account shortly after the Receivership was initiated and he took control of that account. The Receiver was unaware of the funds contained in the Pioneer Bank account and did not take control of that account until February of 2007.

10. The CMHI Pioneer Bank account had a balance of $81,488.17 on November 16, 2005 (the date the Receivership was initiated), and a balance of $138,915.69 on December 1, 2005 (the date CMHI was specifically added as a Relief Defendant to the Receivership action).

11. The Pioneer Bank account had a balance of $304.75 when the Receiver took control of that account in February 2007. Respondent testified that the drawdown on the Pioneer Bank account resulted in a benefit to the Receivership estate because the 2003 College Drive speculative house received the benefit of further construction from the disbursement of the funds.

12. Respondent wrote a check (#528) out of the Pioneer Bank account in the amount of $20,000 on December 5, 2005, payable to his attorney Adam Rafkin's trust account. The $20,000 was disbursed as follows: (1) $10,325.16 to Thomas Gavin for the settlement of a judgment taken in relation to a house built by Respondent; (2) $5,000 to Evelyn Gonzales; (3) $1,325.43 to Adam Rafkin for legal fees; (4) $369.53 to Adam Rafkin for legal fees; and (5) $3,093.88 to Respondent that was turned over to the Receiver. Respondent conceded that the $5,000 to Evelyn Gonzales was for personal use and did not benefit the Receivership estate in any manner. Respondent contends that the $10,325.16 settlement was owed by both himself and his partner Nelson and properly payable as a debt incurred by the two of them while they were

equal partners before the formation of CMHI. The Receiver recovered the $3,093.88 funds from Adam Rafkin's trust funds.

13. The Receiver alleged that Respondent had misappropriated monthly payments of $205.00 made into the Pioneer Bank account from an escrow agency.

14. Respondent testified that remaining funds from the Pioneer Bank account were used to pay vendors and subcontractors relating to the 2003 College Drive speculative house until the funds in the Pioneer Bank account were essentially depleted. Respondent offered no evidence, other than his testimony, that the expended funds did in fact go to vendors of services and goods for the 2003 College Drive speculative house. Respondent testified under oath that he has copies of most invoices for such services and goods, but he failed to bring them to the trial to submit as evidence.

15. Respondent testified under oath that he believed the value of the uncompleted 2003 College Drive speculative house was approximately $50,000 on the date the Receivership was initiated. He further testified under oath that without the further expenditure of the Pioneer Bank account funds, the house would not have brought the approximately $185,000 that was eventually secured by the Receivership for the house when it was sold at auction.

16. The Receiver obtained an appraisal for the 2003 College Drive house showing an appraised value of approximately $192,000. However, the testimony indicates that the appraisal was not conducted until after most of the Pioneer Bank account funds had been expended. Respondent testified that the appraisal, completed after most of the funds were expended, helps support his contention that the house would not have been as valuable as it was on the date the

5

Receivership was initiated if the funds had not been expended to further the construction on the house.

17.   Respondent had actual or constructive knowledge of the Receivership and the binding effects of this Court's Order upon him as early as late November 2005.

18.   After CMHI's assets were liquidated, there was still a shortage of over $200,000 from what Nelson had paid into CMHI in the form of capital investment and what was recovered by the Receiver. The funds used by Nelson for the capital investment were the result of his criminal conduct.

Based upon the above findings, the Court makes the following conclusions of law:

1.   This Court has jurisdiction over Nelson and his assets.

2.   Nelson has pleaded guilty and been sentenced for violating federal securities law.

3.   Although the Receiver and the Respondent disagree as to what was said in their telephone conversation relating to the Receivership and the assets of CMHI, the majority of the Pioneer Bank account funds expended by Respondent upon the speculative houses owned by CMHI benefitted the Receivership in the form of higher sales proceeds at auction and do not constitute misappropriation of Receivership funds.

4.   Respondent misappropriated the $5,000 paid to Evelyn Gonzales.

5.   Although Nelson and Respondent may have been equal partners at the time the Gavin house was built and the adverse judgment was entered as a result of a lawsuit brought relating to the Gavin house, Nelson would, at most, be liable for half of the $10,325.16 paid by Respondent from the Rafkin trust account. However, as an unsecured creditor, Gavin's claim against the Receivership would have been subordinate to Patterson-UTI's claims. Thus, the

CMHI funds should not have been used to pay the Gavin settlement because the Receivership received no benefit from the payment. As such, Respondent misappropriated the full $10,325.16 in CMHI funds from the Pioneer Bank account to pay this settlement for which the Receivership did not receive adequate value.

6. Respondent's attorney's fees paid to Rafkin in the amounts of $1,325.43 and $369.53 were a misappropriation of CMHI Pioneer Bank account funds for which the Receivership received no value.

7. There is insufficient evidence for the Court to determine whether Respondent misappropriated the $205 per month payments made into the account by an escrow agency or whether the Receivership received a benefit from these funds.

8. Respondent was not entitled to any distribution of assets from CMHI because the Receiver failed to secure sufficient assets from the liquidation of CMHI properties to cover the capital infused into CMHI by Nelson.

9. Respondent shall pay the Receiver, for the benefit of the Receivership, a total sum of $17,019.62 as disgorgement of misappropriated funds.

Judgment shall be entered in accordance with the above findings of fact and conclusions of law. Respondent shall bear all costs of court.

IT IS SO ORDERED.

Dated November 16, 2007.

SAM R. CUMMINGS
UNITED STATES DISTRICT COURT